```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

NANCY WORTH WEIR AND                              CIVIL ACTION
ANDREW M. WEIR

VERSUS                                            NO: 07-055

ALLSTATE INSURANCE COMPANY                        SECTION: R(4)


**ORDER AND REASONS**

Before the Court is defendant Allstate Insurance Company's Motion for Summary Judgment. For the following reasons, the Court GRANTS the motion IN PART and DENIES the motion IN PART.

**I.   Background**

The dispute arises out of damages sustained by plaintiffs' property at 2721 Division Street in Metairie, Louisiana, during Hurricane Katrina. Andy and Nancy Weir insured their building against wind damage of up to $185,000 under an Allstate commercial property policy. (R. Doc. 23-4). They carried loss of income coverage for lost rents of up to 12 months and insurance

for business interruption, business continuation expenses, debris removal, and damage to personal property. (R. Doc. 23-4 at 33-34). Mr. Weir is the sole shareholder of a title insurance company (Home Title Insurance Agency) the business of which was interrupted by the storm. (R. Doc. 28-5 at ¶3). Mr. Weir is also a partner in a law firm, Weir and Wally, which did business in the insured premises and also experienced business interruption due to the storm. (R. Doc. 28-5 at ¶2). Additionally, plaintiffs were insured under an Allstate flood policy. (R. Doc. 23-7 at 15). After adjusting plaintiffs' claim, Allstate paid the Weirs the full $10,000 policy limits for flood damage to building contents; a total of $90,999.89 for flood damage to the property (initial payment of $51,326.79; supplemental payment of $39,673.10 after receipt of plaintiffs' expert report); and a total of $28,879.25 for wind damage. (R. Doc. 23-7 at 37-38). Dissatisfied with the amounts tendered, plaintiffs sued Allstate in state court on August 24, 2006, seeking damages for breach of contract and improper claims adjustment as well as damages and attorneys' fees under Louisiana Revised Statutes §§ 22:658 and 22:1220. (R. Doc. 1).

　　　Allstate now moves for summary judgment and contends that: (1) plaintiffs cannot recover for losses of income sustained by Home Title Insurance Agency since Home Title is not a named

insured on the policy; (2) plaintiffs' breach of contract action is premature; (3) the policy does not cover business movables or expenses incurred outside of normal operating costs; (4) plaintiffs are precluded from recharacterizing flood damage as wind damage; and (5) plaintiffs have no evidence that Allstate acted in bad faith in handling plaintiffs' claim.

## II. Legal Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may

satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex,* 477 U.S. at 325; *Lavespere,* 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex,* 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

**III. Discussion**

    **A.   Lost income of Home Title**

Allstate first contends that plaintiffs cannot recover the income losses sustained by Home Title Insurance Agency since the insurance policy limits recovery to the named insureds. The policy provides:

> When coverage is shown in the Declarations for Loss of Income, we will pay up to 12 consecutive months from the time of loss for:
>
> > 1. Your loss of income resulting from a covered loss but not to exceed the actual reduction in net income from the operating of the business plus charges and expenses which necessarily continue

during the interruption of business.

(R. Doc. 23-4 at 33).  The policy provides that "you," "your" and "yours" mean the "person or organization named as the Insured in the Declarations." (R. Doc. 23-5 at 13).  The named insureds on the declarations page of the policy are Andy and Nancy Weir, and the policy specifies that the insureds are individuals. (R. Doc. 23-4 at 12).

The Court finds that Andy and Nancy Weir cannot recover for the losses of Home Title since it is not a named insured, additional insured, or third-party beneficiary under the contract.  Under Louisiana law, an insurance contract, like other contracts, is the law between the parties. *Pareti v. Sentry Indem. Co.*, 536 So.2d 417, 420 (La. 1988).  If the policy wording is clear, and it expresses the intent of the parties, the agreement must be enforced as written. *Id.*  Here, the insurance policy covering the property unambiguously states that the named insureds are Andy and Nancy Weir. (R. Doc. 29-5). Home Title is not listed anywhere on the contract.  Further, plaintiffs have not disputed that Home Title was not a named insured, and there is no indication that plaintiffs ever paid a premium to insure Home Title.  Accordingly, the Court GRANTS summary judgment with respect to plaintiffs' loss of income

claims on behalf of Home Title.

**B.     Prematurity**

Allstate argues that many of plaintiffs' claims for breach of contract are premature because the claims allegedly were not presented to Allstate until January 31, 2008, through expert reports.  Specifically, Allstate asserts that (1) as to the loss of income claim, plaintiffs did not respond to information requests from Allstate's accounting firm that were made in September and December 2005, and July 2006; (2) as to the structure claim, plaintiffs failed to provide satisfactory proof of loss until January 2008; and (3) as to the mold remediation claim, plaintiffs have put forth no evidence that any mold remediation treatment has taken place.  Allstate relies on the following policy provision governing the insured's duties after a loss occurs:

> 11. What To Do If You Have a Loss
>
>> If there is loss or damage to your property covered under this policy, you must:
>>
>> ...
>>
>> d.  Make any reasonable and necessary repairs and keep a record of your expenses.
>>
>> e.  Separate the damaged personal property from

>    the undamaged and make an inventory of the damaged
>    items.
>
>    f.  Show us the damaged property and any records
>    that you have to prove your loss.

(R. Doc. 23-5 at 8).  The policy also requires that the insured agree not to take legal action against the insurer until the insured has first complied with all of the policy's terms. (R. Doc. 23-5 at 9).  Allstate argues that this requires proof of loss as a condition precedent to suit.  However, the policy later states that a Louisiana-specific provision replaces the earlier legal action provision.  That provision eliminates the language requiring compliance with all of the policy's terms before suit and instead provides that "[a]ny person or organization may bring a lawsuit against us. . . but we will not be liable for damages that are not payable under the terms of this policy." (R. Doc. 23-5, Amendatory Endorsement at 4). Absent an explicit condition precedent, the Court will not imply one, particularly in light of the differences between the Louisiana provision and the standard provision.

Furthermore, as this Court has explained, "in Louisiana, proof of loss is not required in any formal style . . . As long as the insurer receives sufficient information to act on the claim, 'the manner in which it obtains the information is

immaterial.'" *Maison Orleans v. Liberty Mut. Fire Ins. Co.*, 2006 WL 2460755 at *3 (E.D. La. 2006) (internal citations omitted). Here, the insurer received sufficient information from plaintiffs to allow Allstate to adjust the damage to plaintiffs' building and pay them nearly $100,000 for flood damage and about $25,000 for wind damage. Further, in an affidavit, Weir states that on August 23, 2007, he sent a written and notarized proof of loss for $64,162.94, along with receipts and estimates, to Allstate. (*See* R. Doc. 28-5 at ¶5). As to the loss of income claim, in his affidavit Weir explains that his loss of income claim did not fully accrue until a year after the storm. (*See* R. Doc. 28-5 at ¶10). Weir also states that he spent over $1,500 in mold remediation supplies and labor. (*See* R. Doc. 28-5 at ¶6). Plaintiffs have demonstrated there are material issues of fact as to whether plaintiffs submitted satisfactory proof of their losses, which render summary judgment on the grounds of prematurity improper.

**C.   Business Moveables**

Allstate contends that plaintiffs cannot recover for any additional contents coverage since they seek to recover for damage to business contents that are not their personal property. Under the policy, plaintiffs have limited coverage

for personal effects on the business premises.  The provision provides:

> We will pay up to a total of $7,500 to cover the personal effects that belong to you, your officers, partners or employees while those personal effects are at the premises described in the Declarations.

(R. Doc. 23-5, Customizer Endorsement at 2).  Plaintiffs do not dispute that they declined coverage for movable business property and thus cannot recover for damage to business movables.  Plaintiffs merely state that Allstate has not provided evidence that they improperly claimed losses for business movables.  But Allstate cites plaintiffs' discovery responses as evidence that they intend to make such an improper claim.  In particular, Allstate cites plaintiffs' answers to its Interrogatory Nos. 7 and 8.  Allstate asked plaintiffs to identify the damaged items or property and to specify which part of the policy they contend covers the item. (R. Doc. 23-7 at 19-20).  In response to Interrogatory 8, plaintiffs claimed losses for damaged office equipment, a duplex photocopier, a single line fax, two printers, and a vacuum cleaner under the personal effects provision. (R. Doc. 23-7 at 23-24).  Plaintiffs do not argue that the cited items are not business movables.

Summary judgment is appropriate on this issue since

plaintiffs do not dispute that their policy does not cover business movables or that the items at issue are business movables. Black's Law Dictionary defines "personal effects" as "items of a personal character." Black's Law Dictionary (7th ed. 1999). The business contents coverage plaintiffs declined would have covered "business contents, owned by you, usual to your business, on the premises . . . ." (R. Doc. 23-4, Policy at 2). Summary judgment is appropriate here since the property at issue is "usual" to plaintiffs' business, a law partnership, and plaintiffs themselves even characterize some of the items as "office equipment." Further, plaintiffs have not argued that these items are personal effects. Accordingly, the Court GRANTS summary judgment on this issue.

### D.   Business Continuation Expenses

Allstate asserts that plaintiffs cannot recover for business continuation expenses because the expenses that they incurred were not in an effort to "maintain normal business operations." Plaintiffs seek to recover for the expense of securing and repairing the building after the hurricane, renting a van for storage of business equipment, and paying the expert witness fees of James A. Conn and John W. Theriot. (R. Doc. 23-7 at 21-24). The relevant policy provision provides:

> We will pay up to $5,000 to help you maintain normal business operations following the damage or destruction of a covered building or property.  We will pay necessary expenses that are over and above your normal operating costs and that are directly related to your loss.

(R. Doc. 23-5, Customizer Endorsement at 3).  Allstate contends that the claimed expenses are not expenses incurred to maintain "normal" business operations, since they were incurred while the business was closed.  Plaintiffs do not dispute Allstate's claims with regard to securing and repairing the building and the expert witness fees.  As to the rental expenses, plaintiffs assert that the rental space was necessary to store files and records while the building was gutted so that Weir could have access to the files and records as the need arose. (*See* R. Doc. 28-5 at ¶7).  Since plaintiffs do not dispute Allstate's argument with regard to their claims for expert fees and securing and repairing the building, summary judgment is appropriate on these issues.  But there are issues of material fact as to whether the rental space was necessary to "maintain normal business operations," and thus summary judgment as to this issue is DENIED.

### E.  Shelving units

Allstate contends that plaintiffs are barred from

recovering for any wind damage to shelving units because they filed a flood claim and received flood payments for damage relating to the shelving units. Plaintiffs do not deny that they claimed damage related to the shelving units and acknowledge that they cannot recover an amount greater than their loss. Plaintiffs maintain that their damages are segregable, since the floodwaters were only one and a half feet deep and the vast majority of the shelving in the office was above that level. (R. Doc. 28-5 at ¶8).

A plaintiff whose property sustains damage from flood and wind can recover for his segregable wind and flood damage, except to the extent that he seeks to recover twice for the same loss. *See Weiss v. Allstate Ins. Co.,* 2007 WL 891869 at *3 (E.D. La. 2007). The submission of a flood claim does not, without more evidence, amount to a representation that plaintiffs' damage was caused exclusively by water. *See id.* at *2. Here, the Court has no evidence that the damage to plaintiffs' shelving was exclusively caused by water, and plaintiffs have submitted an affidavit stating that water damaged only the bottom one and a half feet of shelving. (*See* R. Doc. 28-5 at ¶8). Since there are issues of material fact as to what caused the damage to plaintiffs' shelving, summary judgment is DENIED.

**F.   Bad Faith**

Allstate claims that it is entitled to summary judgment as to plaintiffs' claims for penalties under Louisiana Revised Statutes 22:658 22:1220 since plaintiffs have provided no evidence that Allstate acted in an "arbitrary and capricious" manner in handling plaintiffs' claim.  The Court finds that there is sufficient evidence to establish a genuine issue of material fact as to whether Allstate acted in bad faith.  Weir has provided evidence that Allstate waited until seven months after his lawsuit was filed to pay anything but a small portion of the Weirs' wind damage claim. (R. Doc. 28-5 at ¶4).  Weir asserts that after he received the second payment on his wind damage claim, he continued to complain to Allstate's adjusters about the insufficiency of his payment and his dissatisfaction with the progress of his claim. (R. Doc. 28-5 at ¶4).  Weir contends that Allstate's adjusters told him to have his claim supplemented and that he subsequently sent another written and notarized proof of loss to Allstate, only to receive nothing in return. (R. Doc. 28-5 at ¶¶4-5).  Weir's allegations sufficiently raise material fact issues as to whether Allstate acted in bad faith.  Accordingly, the Court DENIES summary judgment on this issue.

## IV. Conclusion

For the foregoing reasons, Allstate's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

New Orleans, Louisiana, this 20th day of October 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE